UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

**05 11331 JLT**

STEVEN MSCISZ, MARK MSCISZ, & LYNDA MSCISZ,    )
                                                )
    Plaintiffs,                                 )
                                                )
    v.                                          )
                                                )   MAGISTRATE JUDGE _____
KASHNER DAVIDSON SECURITIES CORPORATION,        )
VICTOR KASHNER, MATTHEW MEISTER &               )   RECEIPT #_____
TIMOTHY VARCHETTO,                              )   AMOUNT S_____
                                                )   SUMMONS ISSUED____
    Defendants.                                 )   LOCAL RULE 4.1____
                                                )   WAIVER FORM_____
————————————————————————————————————————)   MCF ISSUED_____
                                                    BY DPTY. CLK_____
                                                    DATE_____

**COMPLAINT FOR VACATION OR
MODIFICATION OF ARBITRATION AWARD**

1.      Pursuant to 9 U.S.C. §§ 10 & 11 and MASS. GEN. L. c. 251 §§ 12 &

13, plaintiffs Steven Mscisz, Mark Mscisz and Lynda Mscisz (collectively

"Customers") respectfully submit this Complaint seeking *vacatur* or modification of

the arbitration award ("Award") issued on June 17, 2005 against the Customers

and in favor of defendants Kashner Davidson Securities Corporation, Victor

Kashner, Matthew Meister, and Timothy Varchetto (collectively "Brokers") by panel

of arbitrators ("Panel") acting under the auspices of NASD Dispute Resolution, Inc.

("NASD") in Case Number 04-03793 ("Arbitration").  A true copy of the Award is

appended to this Complaint as Exhibit A.

2.     As alleged more specifically in the remainder of this Complaint, this action involves the fundamentally defective process from which the Award emanated, not the substance of the claims and defenses underlying it.  Despite the "extremely narrow and exceedingly deferential" standards this Court must apply, the Arbitration was so extraordinarily unfair that the Award must be vacated.

### *Parties*

3.     Plaintiff Steven Mscisz ("Steven") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

4.     Plaintiff Mark Mscisz ("Mark") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

5.     Plaintiff Lynda Mscisz ("Lynda") is an individual residing in the Town of Topsfield, County of Essex, Commonwealth of Massachusetts, and he was a respondent, counterclaimant, and third party claimant in the Arbitration.

6.     Mark and Lynda are husband and wife.

7.     Steven and Mark are brothers.

8.     Defendant Kashner Davidson Securities Corporation ("KDSC" or "Broker-Dealer") is a corporation organized under the laws of the State of Florida, and it maintains its only place of business in that jurisdiction.  KDSC was the claimant and respondent-in-counterclaim in the Arbitration.

13-004-002

9.      Defendant Victor Kashner ("Kashner") is an individual residing in the State of Florida and a registered representative of KDSC. KDSC's namesake, Kashner is its controlling shareholder, chairman of its board of directors, and – until suspended by the U.S. Securities and Exchange Commision in *In re Kashner,* Case No. 3-9049 (SEC 1996), and by the NASD in *In re Kashner Davidson Securities Corp.,* Case No. C07960095 (NASD 2000) – Kashner was an officer of KDSC. Kashner was a third party respondent in the Arbitration.

10.     Defendant Matthew Meister ("Meister") is an individual residing in the State of Florida and, at the time of the events operative for purposes of the underlying arbitration, was a registered representative of KDSC. Meister was a third party respondent in the Arbitration.

11.     Defendant Timothy Varchetto ("Varchetto") is an individual residing in the State of Florida and a registered representative of KDSC. Varchetto was a third party respondent in the Arbitration.

### Jurisdiction, Venue & Assignment

12.     Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over the instant Complaint, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and because the dispute is between citizens of different States.

13.     Pursuant to the Massachusetts "Long-Arm" Statute, MASS. GEN. L. c. 223A, § 3, this Court may exercise personal jurisdiction over the Brokers, because this action arises from their transaction of business in this Commonwealth.

13-004-002

14.    Exercising jurisdiction over the Brokers would not offend the Due

Process clause of the Fourteenth Amendment to the U.S. Constitution, because:

>    a.    the Brokers have sufficient minimum contacts with this
>           Commonwealth such that maintenance of this action would
>           not offend traditional notions of fair play and substantial
>           justice;
>
>    b.    the Brokers' conduct and connection with this
>           Commonwealth are such that they should reasonably
>           anticipate being haled into a Massachusetts court;
>
>    c.    the actions of the Brokers' at issue in this action were
>           purposefully directed toward this Commonwealth; and
>
>    d.    the Commonwealth has a legitimate interest in ensuring the
>           fairness and propriety of arbitration hearings conducted
>           within its borders.

15.    Pursuant to 9 U.S.C. § 10(a) and 28 U.S.C. § 1391(a), venue

properly lies in this District because a substantial part of the events or omissions

giving rise to the Complaint – the Arbitration hearing and, concomitantly, issuance

of the Award – occurred within the Commonwealth of Massachusetts.

16.    The only parties residing in this District reside in its Eastern Division,

so Local Rule 40.1(d)(1)(c) provides that this case be assigned to a judge sitting in

that Division.

17.    The Court's "related case" rule does not apply to this Complaint, and

the case should be assigned by lot, as provided by Local Rule 40.1(A)(3),

because:

>    a.    although KDSC is a defendant in the series of lawsuits entitled
>           *In re Vaso Active Pharmaceuticals Securities Litigation,* Master
>           Docket No. 1:04-cv-10708-RCL ("Vaso Active Class Action"),
>           the Consolidated Amended Class Action Complaint expressly
>           excludes the Customers from the plaintiff class, and the Vaso
>           Active Class Action and the captioned civil action do not
>           involve questions of fact or law sufficiently close to make them
>           "related cases" under Local Rule 40.1(E); and

- 4 -

b.   although KDSC and Kashner were both defendants in *SEC v. Williams,* Case No. 1:93-cv-12789-JLT, and although the Final Judgment entered in that case would have been evidence in the Arbitration if the Customers had been accorded a fair and complete hearing, more than two years have elapsed since *Williams* was closed.

## *Background*

18.   In late 2003, the Customers appointed KDSC to serve as their agent

to place securities transactions in accounts they opened at Sterne, Agee & Leach,

Inc. and SAL Financial Services, Inc. (collectively "SALI") at they same time they

began doing business with KDSC.

19.   KDSC was not an agent of SALI.

20.   The Customers would have proven (if they had been afforded access

to and permitted to adduce relevant evidence during the Arbitration) that KDSC

personnel fraudulently and in derogation of applicable regulations and standards of

care induced them to establish their relationships with KDSC and SALI

21.   Meister and Varchetto were the KDSC employees responsible for the

Customers' accounts.

22.   Kashner is a "controlling person" of KDSC, as that term is defined

under the Federal securities laws, and he supervised the activities of Meister and

Varchetto.

23.   SALI and the Customers entered into Client Account Agreements,

and neither KDSC nor any of its agents or employees was a party to those

contracts.

24.   Neither Kashner, Meister nor Varchetto was a third-party beneficiary

of the Client Account Agreements between SALI and the Customers.

13-004-002

25.     After opening their SALI accounts and appointing KDSC to serve as their agent, the Customers – through Meister and Varchetto – purchased shares in Vaso Active Pharmaceuticals, Inc. ("VAPH").

26.     The brother of Mark and Steven was the President of VAPH, and KDSC was in the process of underwriting an initial public offering ("IPO") of VAPH stock at the time the Customers began their relationships with KDSC.

27.     In February 2004, the Client Account Agreements between the Customers and SALI were amended to add margin privileges.

28.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to begin trading on margin after the IPO, when the price of VAPH stock was rising.

29.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced them to make unsuitable trades or maintain imprudent positions in VAPH stock.

30.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care induced Mark and Lynda to pursue a "day trading" strategy with respect to VAPH stock soon after they began trading on margin.

13-004-002

31.     Under the amended Client Account Agreements, margin transactions involved the extension of credit by SALI only, and neither KDSC nor any of its agents ever lent money to the Customers or any of them.

32.     SALI kept the securities accounts of Steven separate from the securities accounts of Mark and Lynda, and SALI kept the margin account of Steven separate from the margin account of Mark and Lynda.

33.     Although the margin liability of Mark and Lynda was to be "joint and several" under their Client Account Agreement with SALI, there was never any agreement pursuant to which Mark and Lynda would be jointly and severally liable with Steven for deficiencies in his margin account, nor was there any agreement pursuant to which Steven would be jointly and severally liable with Mark and Lynda for deficiencies in their margin account.

34.     No Client Account Agreement between SALI and Steven was ever incorporated into a Client Account Agreement between SALI, Mark and Lynda, and no Client Account Agreement between SALI, Mark and Lynda was ever incorporated into a Client Account Agreement between SALI and Steven.

### The Dispute

35.     In the Spring of 2004, the price of VAPH stock dropped precipitously, and SALI issued several margin calls to the Customers.

13-004-002

36.     The Customers would have proven (if they had been afforded access to and permitted to adduce relevant evidence during the Arbitration) that KDSC personnel fraudulently and in derogation of applicable regulations and standards of care manipulated the market for VAPH stock, were complicit in such manipulation, or otherwise benefited from declines in the value of the Customers' VAPH holdings.

37.     The Customers are informed and believe, and they therefore aver, that KDSC, Kashner, Meister and Varchetto feared that the Customers would seek to hold them liable for the deficiencies in their SALI margin accounts that resulted from the declines in the price of VAPH stock.

38.     The Customers are informed and believe, and they therefore aver, that KDSC preemptively and hastily commenced the Arbitration on May 25, 2004 – only 7 weeks after the first margin call – in order to obtain a tactical advantage in proceedings to resolve their anticipated disputed with the Customers.

39.     At the time KDSC commenced the Arbitration, none of the Customers was indebted to it.

40.     KDSC's Statement of Claim nonetheless alleged that the Customers were indebted to it.

41.     KDSC never issued a margin call to the Customers.

42.     KDSC never rendered a putative statement of margin indebtedness to any of the Customers.

43.     At the time KDSC commenced the Arbitration, it was not party to any of the Client Account Agreements between the Customers and SALI.

13-004-002

44. KDSC's Statement of Claim nonetheless alleged that it was party to the Client Account Agreements.

45. At the time KDSC commenced the Arbitration, none of the Customers had margin accounts with KDSC.

46. KDSC's Statement of Claim nonetheless alleged that the Customers had margin accounts with KDSC.

47. KDSC's Statement of Claim did not allege or otherwise give the Customers notice that it contended that SALI assigned its ostensible claims against the Customers to KDSC, that it was subrogated to the putative rights of SALI against the Customers, or that KDSC otherwise had some indirect standing to recover from the Customers.

48. On August 26, 2004, the Customers filed with the NASD and caused the Brokers to be served with their Answer, Affirmative Defenses and Statement of Counterclaims & Third Party Claims ("Answer").

49. As provided by Rule 10314 of the NASD's Code of Arbitration Procedure, the Customers' Answer responded to the factual averments set forth in KDSC's Statement of Claim and laid out their affirmative defenses, counterclaims against KDSC, and third party claims against Kashner, Meister and Varchetto.

50. The Customers' Eighth Affirmative Defense was that "KDSC's claims against the Customers must fail because it is not the real party in interest."

13-004-002

51.    The Customers never withdrew or amended their Eighth Amended Defense, of which the Brokers and their counsel were on notice throughout the Arbitration, and which constituted a complete defenses under Alabama law, which governed the Client Account Agreements.

**The Agreements to Arbitrate**

52.    The Customers' Client Account Agreements arguably compelled them to submit all disputes between them and KDSC (other than class actions) to arbitration.

53.    However, Kashner, Meister and Varcetto were not parties to or third party beneficiaries of the Client Account Agreements executed by the Customers.

54.    KDSC executed the NASD's standard form Uniform Submission Agreement when it commenced the Arbitration and, according to the Award, Kashner executed the same standard form Uniform Submission Agreement, but neither Meister nor Varchetto executed any submission agreement whatsoever.

55.    The Customers were not generally opposed to Arbitration, but they understood that arbitration of all of their claims was not mandatory. Accordingly, instead of executing the NASD's Uniform Submission Agreement, the Customers signed a Submission Agreement which conditioned their participation to arbitrate on their being afforded "a fair and complete opportunity to obtain adjudication of their claims and defenses." A true copy of the Submission Agreement executed by the Customers is appended to this Complaint as Exhibit B.

13-004-002

56.    So long as they would receive a "fair and complete opportunity to obtain adjudication of their claims and defenses," the Customers were prepared to prosecute in the Arbitration even those claims for which arbitration was not mandatory, and they manifested that position in the Submission Agreement they executed.

57.    The Submission Agreement executed by the Customers represented their only agreement to arbitrate insofar as the Customers' claims against Kashner, Meister and Varchetto were concerned.

## Discovery

58.    Pursuant to Rule 10321(b) of the NASD's Code of Arbitration Procedure, the Customers propounded comprehensive but focused requests for information relevant to KDSC's claims and the Customers' defenses, counterclaims and third party claims.

59.    In response, KDSC refused to produce anything but the most innocuous account statements and like documents.

60.    KDSC even refused to produce documents identified in the NASD's Discovery Guide as "presumptively discoverable" if the Arbitration involves claims like those asserted by the Customers.

61.    Despite the repeated entreaties of the Customers and their counsel, the Brokers and their counsel never agreed to confer with them in an effort to narrow their discovery disputes.

13-004-002

62.    The Customers were thus compelled to make a motion seeking compelled production of the requested information.

63.    The Panel's chairman largely denied the Customers' motion to compel – even refusing to compel KDSC to produce the "presumptively discoverable" information absolutely necessary to the competent prosecution of their counterclaims and third party claims.

64.    The conduct of discovery in the Arbitration was largely committed to the discretion of the Panel or its designee, but the chairman's unexplained refusal to compel production of the "presumptively discoverable" information was manifestly abusive of that discretion.

65.    Before the chairman's refusal to compel production of the "presumptively discoverable" information, it remained possible for the Customers to receive the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, but the decision denying them essential discovery did irreparable, fundamentally unfair, violence to the Customers' ability to proceed.

66.    Of the limited additional information the Panel's chairman did order KDSC to produce, KDSC only produced a portion – contravening not only the chairman's order, but also the NASD's business conduct standards.

67.    The Customers subsequently moved for reconsideration of the chairman's order on their motion to compel, and for an order compelling KDSC's compliance with the portion of the order that required some additional discovery, but neither the Panel nor its chairman ever ruled on those motions.

13-004-002

## **Dismissal of Counterclaims & Third Party Claims**

68.    Consequently, regretfully, and pursuant to Rules 10305 and 10328(c) of the NASD's Code of Arbitration Procedure, the Customers moved to withdraw without prejudice their third party claims and counterclaims on February 24, 2005 – little more than two weeks after their Counsel received the fundamentally unfair discovery orders from the NASD.

69.    Because the discovery rulings had denied them the "fair and complete opportunity to obtain adjudication of their claims and defenses" on which their Submission Agreement was conditioned, the Customers intended to reassert their third party claims and (to the extent arbitration thereof was not compulsory) their counterclaims in a judicial forum.

70.    However, the Panel not only denied the Customers' motion to withdraw their counterclaims and third party claims without prejudice, but it went so far as to order, *sua sponte,* that those claims be dismissed with prejudice.

71.    The Brokers had not requested dismissal with prejudice in their opposition to the Customers' motion, and the Customers certainly had not requested that those claims be dismissed with prejudice.

72.    The Brokers had never moved to dismiss as factually or legally insufficient the Customers' counterclaims and third party claims, the Customers had never been called upon or afforded an opportunity to explain the specifics of those claims to the Panel, and the Customers had not been afforded notice that dismissal with prejudice was an option that might be considered by the Panel.

13-004-002

73.    Rule 10305(b) of the NASD's Code of Arbitration Procedure – the
only provision allowing dismissal of claims with prejudice and without a hearing on
their merits – limits that power of the Panel to instances where it is necessary "as a
sanction for willful and intentional material failure to comply with an order of the
arbitrator(s) if lesser sanctions have proven ineffective."

74.    Before the Panel purported to dismiss the Customers' counterclaims
and third party claims with prejudice, the Customers had not been sanctioned in
the Arbitration, and it logically follows that no lesser sanction could have "proven
ineffective."

75.    Indeed, before the Panel purported to dismiss the Customers'
counterclaims and third party claims with prejudice, the Customers had never been
guilty of a "willful and intentional material failure to comply with an order of the
arbitrator(s)", and the Panel's order dismissing their claims did not find that there
had been such a failure.

76.    The Customers are informed and believe, and they therefore aver,
that the members of the Panel were piqued and offended by the grounds (that they
had been deprived of the "fair and complete opportunity to obtain adjudication of
their claims and defenses" on which their Submission Agreement was conditioned)
the Customers offered for seeking leave to withdraw without prejudice their
counterclaims and third party claims, and that the Panel's dismissal with prejudice
of those claims was an arbitrary, capricious, whimsical, and vindictive retaliation for
the Customers' honest statement of their reasons.

13-004-002

77.    The Panel paid lip service to the applicability of Rule 10305 – and then ignored it – when it dismissed the counterclaims and third party claims with prejudice.

78.    The order purporting to dismiss the counterclaims and third party claims with prejudice was interlocutory until it was incorporated into the Award, so the Customers could not seek its vacation until after the Award was issued.

### Unauthorized Practice of Law

79.    Pursuant to the standard operating procedures of the NASD, the hearing in the Arbitration was to be held in Boston.

80.    After the Panel set the initial date for the hearing, KDSC and the Brokers made clear that they would be represented at that hearing by attorneys who are not licensed to practice law in this Commonwealth.  The lead attorney was to be Kashner's son-in-law, Marc J. Ross, of the New York Bar.

81.    Believing that participation by those lawyers in the hearing would violate Rule 5.5(a) of the Massachusetts Rules of Professional Conduct, concerned that participation by the Customers' counsel in that hearing with knowledge of that apparent violation would itself violate Rule 5.5(b) of the Rules of Professional Conduct, and mindful that the Chief Judge of this Court had recently certified similar issues to the SJC (see In re Lucas, 317 B.R. 195, 215 (D. Mass. 2004)), the Customers filed a motion asking the Panel to stay the arbitration pending the SJC's resolution of the certified issues or disqualify the Brokers' counsel from the Arbitration.  The Panel's chairman denied that motion.

13-004-002

82.    The NASD subsequently issued a policy statement consistent with the Customers' position concerning the unauthorized practice of law issue in the Arbitration, so the Customers moved for reconsideration of the chairman's decision, but the chairman of the Panel denied that motion.

83.    With the law remaining unsettled, and with the continued possibility that they might unwillingly but knowingly abet the unauthorized practice of law at the hearing, the Customers sought a declaratory judgment from a single justice of the SJC (Case No. SJ-2005-0088).

84.    The single justice (Cordy, J.) accepted the Customers' reasoning but nonetheless denied their request for a declaratory judgment because he felt that strict application of Mass. R. Prof. C. 5.5(a) under the circumstances of the Arbitration would produce "too harsh a result."

85.    The Customers have appealed the single justice's decision to the full SJC, and the unauthorized practice of law issues certified to the SJC by this Court remain undecided.

## Other Pre-Hearing Procedural Breakdowns

86.    Because discovery motions remained outstanding, and because they wanted to establish definitively the status of their claims and counterclaims, the Customers – as was their absolute right under Rule 10321(d) of the NASD's Code of Arbitration Procedure – requested a pre-hearing conference to discuss those and other issues before final preparations for the hearings had been made.

- 16 -

87. The Panel – despite the clear requirement of Rule 10321(d) – did not hold the pre-hearing conference the Customers had requested on May 11, 2005. Nor did the Panel even acknowledge that request.

## The Hearing

88. Without holding the requested pre-hearing issue to resolve unresolved issues, the Panel commenced the hearing as scheduled on May 17, 2005, and the hearing continued through the morning of May 18, 2005.

89. Although the hearing was held in Boston, the Brokers' case was presented by an attorney not licensed to practice in the Commonwealth of Massachusetts.

90. Steven, Mark, Varchetto and KDSC's President, Melissa Rothenbach ("Rothenbach"), were the only witnesses to testify during the hearing.

91. Because they had been denied a fair opportunity to present the Brokers' misconduct to the Panel, the Customers' presentation was focused on the "real party in interest" defense of which the Brokers had been on notice since August 2004.

92. Varchetto and Rothenbach consistently admitted the factual predicates of the Customers' "real party in interest" defense.

93. KDSC did not adduce evidence establishing a contract between KDSC and the Customers or an account due and owing to KDSC by the Customers.

13-004-002

94.    The Brokers did not even attempt to establish the elements of a frivolous, calumnious fraud claim they had asserted against Mark and Lynda.

95.    Varchetto offered no testimony concerning any putative assignment, subrogation or other indirect theory giving KDSC standing to recover from the Customers, and KDSC had not given notice of any such indirect standing theory in advance of the hearing.

96.    During the testimony of the last witness in the hearing, KDSC's counsel came forward with a document – created and executed that very day – which purported to assign SALI's putative rights against the Customers to KDSC. That witness acknowledged that, prior to the mid-hearing assignment of the putative claims, SALI had remained the owner of those claims.

97.    Although the assignment had been received by KDSC and its counsel at 1:45 p.m. on the day of the hearing, they waited until the very end of the testimony – nearly two hours later – to reveal its existence.

98.    Despite these material failures in KDSC's evidence, the Panel denied the Customers' oral motion to dismiss the Arbitration, which motion was based on KDSC's failure to make out a *prima facie* case.

99.    Although KDSC had known for 9 months of the Customers' "real party in interest" defense, and despite the requirement in Rule 10321(c) of the NASD's Code of Arbitration Procedure that the parties exchange exhibits at least 20 days before the hearing, the Brokers and their counsel had never previously produced – or even intimated the existence of – any assignment of SALI's putative claims against the Customers.

- 18 -

13-004-002

100. Fairness to the Customers required notice of the claims being asserted against them and a meaningful opportunity to defend themselves, and KDSC's "sandbagging" tactics deprived the Customers of both.

101. KDSC's counsel sought to justify his 180 degree change in course with what he characterized as an oral motion to amend KDSC's Statement of Claim to conform to the evidence.

102. KDSC's "sandbagging" of the Customers was consequential. Under Section 8-5-25 of the Alabama Code, which governed the Client Account Agreements, KDSC would have taken SALI's claims against the Customers "subject to all payments, setoffs, and discounts" they had against SALI, but the last-minute assignment prevented the Customers from ascertaining whether they had such offsetting claims against SALI, from taking discovery concerning those offsets or the validity of the putative assignment, and from presenting relevant evidence at the hearing.

103. Additionally, the Customers made strategic and tactical decisions based on their assumption that KDSC would seek to prove the case it pled, and the Customers expended significant resources preparing and proving their "real party in interest" defense.

104. The Panel nonetheless allowed KDSC's post-testimony motion to amend its pleading, and the Panel accepted the last-minute assignment into evidence over the Customers' objection.

105. At the hearing, KDSC also came forward with an affidavit purporting to justify its claim for attorneys' fees and collection costs.

13-004-002

106.    The Customers objected to the affidavit and the materials appended to it, because they contained information and incorporated documents that had been in KDSC's possession long before the 20-day deadline for the exchange of exhibits specified by Rule 10321(c) of the NASD's Code of Arbitration Procedure, and KDSC's decision to spring that evidence on the Customers at the hearing deprived them of any ability to scrutinize and counter the affidavits and exhibits.

107.    The Panel nonetheless received the affidavit and exhibits thereto into evidence.

108.    At the end of the hearing, when reading a script mandated by the NASD, the Panel's chairman asked the Customers' attorney "to state affirmatively whether [the Customers] had a full and fair opportunity to be heard" and, consistent with the averments set forth in this Complaint, counsel gave the only answer he could truthfully provide under the circumstances – "no."

## The Award

109.    On June 17, 2005, the Panel issued its Award and:

   a.    found the Customers jointly and severally liable to KDSC for $421,000.00 (including attorneys' fees) in what the Panel characterized as compensatory damages;

   b.    reiterated and incorporated the dismissal with prejudice of the Customers counterclaims and third party claims; and

   c.    directed the Customers, jointly and severally, to pay $6,900.00 in forum fees.

110.    KDSC had never pled or asserted a lawful basis for making the Customers jointly and severally liable with respect to the compensatory damages.

- 20 -

13-004-002

111.    The debt KDSC alleged to be owed by Steven was – as it properly

should have been – pled and always treated as separate from the debt allegedly

owed by Mark and Lynda.

112.    The Customers' counsel received the Award on the afternoon of June

20, 2005.

### Grounds for Vacation or Modification of Award

### Count I
### Award Exceeding Powers of Panel
### (9 U.S.C. § 10(a)(4) & Mass. Gen. L. c. 251, § 12(a)(3))

113.    The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 112 of this Complaint.

114.    The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that "the arbitrators exceeded

their powers."

115.    Although no statute, common law rule, agreement between the

Customers and Brokers, or NASD rule incorporated into such an agreement gave

the Panel the power to do so under the circumstances of this Arbitration, the Panel

> a.    Dismissed with prejudice the Customers' counterclaims and third party claims;
>
> b.    Granted KDSC's putative "oral motion to conform the pleadings to the proof"; and
>
> c.    Held the Customers "jointly and severally liable" for the so-called "compensatory damages" the Panel awarded.

116.    The Customers are therefore entitled to an order vacating the Award.

13-004-002

## Count II
### Refusal to Hear Material Evidence
### (9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))

117.    The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 116 of this Complaint.

118.    The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that the Panel refused to hear

evidence material to the controversy or otherwise conducted the Arbitration hearing

in such a way as to prejudice the rights of the Customers.

119.    The Panel refused to hear the following material evidence:

a.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated Sections 7, 9 and 10(b) of the Securities Act of 1934;

b.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Florida Securities Transactions Act;

c.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the Massachusetts Uniform Securities Act;

d.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers violated the NASD's own Business Conduct Standards;

e.    Evidence necessary to ensure a full and fair hearing on the Customers' claim that the Brokers engaged in common law fraud;

f.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers were unjustly enriched;

g.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers converted their property;

h.    Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC breached its contracts with them;

13-004-002

    i.      Evidence necessary to ensure a fair and complete hearing on the Customers' claim that Kashner, Meister and Varchetto violated the Racketeer Influenced and Corrupt Organizations Act;

    j.      Evidence necessary to ensure a fair and complete hearing on the Customers' claim that KDSC abused the NASD's process;

    k.     Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Massachusetts Consumer Protection Act;

    l.      Evidence necessary to ensure a fair and complete hearing on the Customers' claim that the Brokers violated the Florida Consumer Protection Act;

    m.   Evidence relevant to the Customers' counterclaims and third party claims, insofar as such evidence was necessary to establish the circumstances under which the alleged margin debts were incurred.

120.  The Panel otherwise prejudiced the rights of the Customers by:

    a.     Conducting a hearing in which KDSC sought to establish alleged margin debts owed by the Customers without affording them a fair and complete opportunity to establish how the Brokers' malfeasance had given rise to those alleged debts;

    b.     Depriving the Customers of a forum in which they would have a fair and complete opportunity to present their claims and defenses;

    c.     Refusing to compel KDSC to produce to the Customers information concerning their claims and defenses which the NASD itself deemed "presumptively discoverable" in such cases;

    d.     Failing to enforce its own order compelling KDSC to produce information to the Customers;

    e.     Purporting to dispose of third party claims concerning which the Customers' agreement to arbitrate was subject to the proviso that they be "afforded a fair and complete opportunity to obtain adjudication of their claims and defenses" but without fulfilling that condition precedent;

    f.     Failing to rule promptly (or, in some instances, at all) on pre-hearing motions made by the Customers;

- 23 -

g. Failing to hold the pre-hearing conference requested by the Customers on May 11, 2005;

h. Presenting the Customers with the "Hobson's Choice" of abetting the unauthorized practice of law by the Brokers' counsel or defaulting in the Arbitration; and

i. Placing its imprimatur on the "sandbagging" strategy of the Brokers and their counsel.

121. The Customers are therefore entitled to an order vacating the Award.

## Count III
## Award Procured by Undue Means
## (9 U.S.C. § 10(a)(1) & Mass. Gen. L. c. 251, § 12(a)(1))

122. The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 121 of this Complaint.

123. The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that the award was procured by

"undue means."

124. The Award in this case was procured by the following undue means:

a. KDSC's false allegations in its Statement of Claim that it was a party to the margin agreements at issue, 9 months of muteness while the Customers challenged its standing, and (after all witnesses had finished testifying in the Arbitration hearing) "sandbagging" the Customers with a document purporting to assign to KDSC the putative claims of the real party in interest;

b. KDSC's abandonment of its Statement of Claim after the evidence was closed and concomitant oral motion to conform that pleading to the evidence adduced during the hearing;

c. The Brokers' abetting the unauthorized practice of law by their counsel, who – unencumbered by the Massachusetts Rules of Professional Conduct or any need to preserve his standing in the local legal community – effectuated KDSC's "sandbagging" strategy;

- 24 -

13-004-002

d.  KDSC's failure to cooperate, as required by Rule 10321 of the
    NASD Code, "to the fullest extent practicable in the voluntary
    exchange of documents and information" to expedite the
    Arbitration and its failure to "endeavor to resolve disputes"
    concerning discovery before necessitating motion practice;

e.  KDSC's failure to produce documents in its possession or
    control as directed by the Panel pursuant to the NASD Code
    of Arbitration Procedure; and

f.  KDSC's failure to serve the Customers with copies of
    documents they intended to present as evidence at least 20
    days prior to the hearing.

125.  The Customers are therefore entitled to an order vacating the Award.

## Count IV
## Manifest Disregard of the Law

126.  The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 125 of this Complaint.

127.  This Court is permitted to make an order vacating the Award if it

concludes that the Panel acted in "manifest disregard of the law."

128.  In the following instances, the Panel "recognized the applicable law –

and then ignored it":

a.  The dismissal with prejudice of the Customers' counterclaims
    and third-party claims, despite the plain language of Rule
    10305 in the NASD's Code of Arbitration Procedure, which
    only permits dismissal with prejudice under circumstances not
    present in the Arbitration;

b.  The refusal to stay the Arbitration or disqualify the Brokers'
    counsel pending determination by the SJC of the
    "unauthorized practice of law" issues certified by the Chief
    Judge of this Court – especially after the Panel had been
    informed that the NASD had itself taken the position that the
    ability of a foreign attorney to participate in a hearing is for
    determination by the courts of the forum state; and

13-004-002

     c.     The Panel chairman's refusal to compel KDSC to produce information specified as "presumptively discoverable" in the NASD's Discovery Guide.

129.   The Customers are therefore entitled to an order vacating the Award.

## Count V
## Refusal to Postpone Hearing
## (9 U.S.C. § 10(a)(3) & Mass. Gen. L. c. 251, § 12(a)(4))

130.   The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 129 of this Complaint.

131.   The Federal and Massachusetts Arbitration Acts permit this Court to

make an order vacating the Award if it concludes that the Panel refused to

postpone the Hearing "upon sufficient cause."

132.   The Panel refused to postpone the hearing pending determination of

the "unauthorized practice of law" issues certified to the SJC by the Chief Judge of

this Court, and the unsettled nature of those issues constituted "sufficient cause"

for postponement.

133.   The Customers are therefore entitled to an order vacating the Award.

## Count VI
## No Agreement To Arbitrate
## Issues Addressed In Award
## (Mass. Gen. L. c. 251, § 12(a)(5))

134.   The Customers repeat and reallege, as if fully set forth in this

paragraph, the averments set forth in paragraphs 1 through 133 of this Complaint.

135.   The Massachusetts Arbitration Act permits this Court to vacate the

Award if there was no arbitration agreement and the Customers did not participate

in the hearing without objecting to that agreement.

13-004-002

136.   In this case, the Customers agreed to arbitrate disputes between them and KDSC (to the extent such claims are lawfully arbitrable), but the Customers' Submission Agreement – their only agreement to arbitrate the third party claims against Kashner, Meister and Varchetto – was subject to the proviso that they be afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses."

137.   The "fair and complete" adjudication proviso in the Customers' Submission Agreement was not satisfied.

138.   Furthermore, neither Meister nor Varchetto executed an agreement submitting the third party claims to arbitration, so – even if the Customers had been afforded a "fair and complete opportunity to obtain adjudication of their claims and defenses" – there was no meeting of the minds concerning arbitrability of the third party claims against Meister and Varchetto.

139.   At and before the hearing, the Customers objected to the Panel's intention to dispose of the third party claims against Kashner, Meister and Varchetto.

140.   The Customers are therefore entitled to an order vacating the Award to the extent it purported to dispose of their third party claims.

## Count VII
## Correction of Errors
## (9 U.S.C. § 11 & Mass. Gen. L. c. 251, § 13)

141.   The Customers repeat and reallege, as if fully set forth in this paragraph, the averments set forth in paragraphs 1 through 140 of this Complaint.

13-004-002

142. The Federal and Massachusetts Arbitration Acts permit this Court to

modify or correct the Award if it is somehow imperfect in a manner that does not

affect the merits of the controversy.

143. The Award contains at least two such errors that should be corrected

if the Award is not vacated altogether for any of the reasons claimed in Counts I

through VI of this Complaint:

- a. The Award states that each of the Customers executed the NASD's "Uniform Submission Agreement" but the record establishes that they did not. Instead, the Customers executed a Submission Agreement expressly conditioning their assent to arbitrate on their being "afforded a fair and complete opportunity to obtain adjudication of their claims and defenses."

- b. The Award holds the Customers "jointly and severally liable" for compensatory damages in the amount of $421,000.00, but the Arbitration actually arose from distinct margin accounts alleged by KDSC – one involving Steven, and the other involving Mark and Lynda – and any compensatory damages ultimately included in the Award should be allocated to the appropriate parties.

WHEREFORE, for the reasons set out above, the Customers respectfully

request that the Court grant the foregoing Complaint and:

- a. Enjoin enforcement of the Award and accrual of interest thereupon pending its determination of this Complaint and

- b. Either:

  - i. Vacate the Award, direct a rehearing of KDSC's claims against the Customers by a new panel of arbitrators, order those arbitrators to afford the Customers fair and complete discovery and a fair and complete hearing concerning their counterclaims against KDSC (to the extent arbitration of such counterclaims is mandatory), and leave the Customers to their judicial remedies concerning the counterclaims and third party claims of which arbitration is not mandatory; or

- 28 -

13-004-002

ii. Correct or modify the Award as prayed for in Count VII of this Complaint; and

c. Grant such other relief as the Court deems necessary and just.

**TO THE EXTENT ANY ISSUE RAISED BY THIS COMPLAINT MAY BE TRIED BY A JURY, THE APPLICANTS DEMAND SUCH A TRIAL.**

Respectfully submitted,

STEVEN MSCISZ,
MARK MSCISZ & LYNDA MSCISZ

By their attorney,

William P. Corbett, Jr. (BBO #561204)
THE CORBETT LAW FIRM
*A Professional Corporation*
85 Exchange Street, Suite 326
Lynn, Massachusetts 01901-1429
(781) 596-9300

Dated: June 24, 2005

13-004-002

# *Exhibit A*

# Award
## NASD Dispute Resolution

In the Matter of the Arbitration Between:

Kashner Davidson Securities Corporation (Claimant) v. Steven Mscisz, Mark Mscisz, and Lynda Mscisz (Respondents) v. Victor Kashner, Matthew Meister, and Timothy Varchetto (Third-Party Respondents)

Case Number: 04-03793                    Hearing Site: Boston, Massachusetts

Nature of the Dispute:  Member vs. Customers (Initial Claim).
                        Customers vs. Member (Counterclaim)
                        Customers vs. Associated Persons (Third-Party Claims).

### REPRESENTATION OF PARTIES

Claimant Kashner Davidson Securities Corporation ("KDSC") hereinafter referred to as "Claimant" and Third-Party Respondents Victor Kashner ("V. Kashner"), Matthew Meister ("M. Meister"), and Timothy Varchetto ("T. Varchetto") hereinafter collectively referred to as "Third-Party Respondents":  Howard M. Smith, Esq., Newman & Smith, Newton, MA.  Previously represented by:  Marc J. Ross, Esq., Sichenzia Ross Friedman Ference, LLP, New York, NY.

Respondents Steven Mscisz ("S. Mscisz"), Mark Mscisz ("M. Mscisz"), and Lynda Mscisz ("L. Mscisz") hereinafter collectively referred to as "Respondents":  William P. Corbett, Jr., Esq., The Corbett Law Firm, Lynn, MA.

### CASE INFORMATION

Statement of Claim filed on or about:  May 26, 2004.
Claimant signed the Uniform Submission Agreement:  May 24, 2004.

Joint Statement of Answer, Affirmative Defenses, Counterclaims and Third-Party Claims filed by Respondents on or about:  August 26, 2004.
Respondent S. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent M. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.
Respondent L. Mscisz signed the Uniform Submission Agreement:  August 26, 2004.

Joint Reply and Answer filed by Third-Party Respondents on or about:  September 9, 2004.
Third-Party Respondent Kashner signed the Uniform Submission Agreement:  October 1, 2004.
Third-Party Respondent Meister did not sign the Uniform Submission Agreement.
Third-Party Respondent Varchetto did not sign the Uniform Submission Agreement.

## CASE SUMMARY

Claimant asserted the following causes of action: breach of contract; money lent; open book account; and fraud/fraud in the inducement. The causes of action relate to unspecified securities.

Unless specifically admitted in its Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses. In its Counterclaims and Third-Party Claims, Claimant asserted the following causes of action: violations of Sections 7, 9, and 10(b) of the Securities Act of 1934; violations of the Florida Securities Transactions Act; violations of the Massachusetts Uniform Securities Act; violations of NASD Business Conduct Standards; common law fraud; unjust enrichment; conversion; breach of contract; violation of the Racketeer Influenced and Corrupt Organization Act; abuse of process; violation of the Massachusetts Consumer Protection Act and the Florida Consumer Protection Act.

Unless specifically admitted in their Reply and Answer of Third-Party Claims, Claimant and Third-Party Respondents denied the allegations made in the Counterclaims and Third-Party Claims and asserted various affirmative defenses.

## RELIEF REQUESTED

Claimant requested compensatory damages in the amount of $173,634.22; compensatory damages in the amount of $176,923.98; interest; costs of collection, including NASD filing and hearing fees and attorneys; fees; and such other and further relief as the Panel deems just, fair, and equitable.

Respondents requested that the Panel dismiss Claimant's Statement of Claim, with prejudice; on their Counterclaims and Third-Party Claims, unspecified compensatory damages in threefold; prejudgment interest; attorneys' fees; costs; an order that Claimant disgorge and make full restitution to Respondents; other appropriate equitable relief; and such other and further relief as the Panel deems necessary and just.

Third-Party Respondents requested that the Panel award Claimant the relief sought in the Statement of Claim; that the Panel deny and dismiss each and every claim asserted in the Counterclaims and Third-Party Claims; that the Panel issue sanctions against Respondents; and such other and further relief as the Panel deems just, equitable, and proper.

## OTHER ISSUES CONSIDERED AND DECIDED

Upon review of the file and the representations made on behalf of the Claimant, the undersigned arbitrators (the "Panel") determined that Respondent L. Mscicz has been properly served with the Statement of Claim and received due notice of the hearing, and that arbitration of the matter would proceed without said Respondent present, in accordance with the NASD Code of Arbitration Procedure (the "Code").

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 3 of 6

Third-Party Respondents Meister and Varchetto did not file with NASD Dispute Resolution properly executed Uniform Submission Agreements but are required to submit to arbitration pursuant to the Code and are bound by the determination of the Panel on all issues submitted.

The Panel previously ruled that the Counterclaims and Third-Party Claims filed by Respondents are dismissed, with prejudice.

At the hearing, Claimant made an oral motion to conform the pleadings to the proof. After due consideration, the Panel determined to grant the motion.

Respondents made a motion for a stenographic transcription of the hearing. After due consideration, the Panel granted the motion and ordered the following: "Respondents are to provide NASD with a copy of the transcript. Claimant is to obtain the transcript at its own cost; Respondents do not have to pay for Claimant's transcript".

Respondents made a motion to dismiss for failure to make a prima facie case. After due consideration, the Panel denied the motion.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

## AWARD

After considering the pleadings, and the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1. Respondents are jointly and severally liable for and shall pay Claimant compensatory damages in the amount of $421,000.00, inclusive of attorneys' fees and costs according to the margin agreement, plus interest at the WSJ prime rate from May 18, 2005 until the date of payment of the award.

2. Respondents' Counterclaims and Third-Party Claims are dismissed.

2. Any and all relief not specifically addressed herein is denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:
|  |  |
| --- | --- |
| Initial claim filing fee | = $1,000.00 |
| Third-Party Claim filing fee | = $  250.00 |

### Member Fees

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 4 of 6

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated persons at the time of the events giving rise to the dispute. Accordingly, Kashner Davidson Securities Corp. is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $2,750.00 |

## Adjournment Fees

Adjournments granted during these proceedings for which fees were assessed:

| | |
|---|---|
| March 2-4, 2005, adjournment by Respondents | = Waived |

## Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| Tow (2) Pre-hearing sessions with a single arbitrator @ $450.00 | | | = $  900.00 |
|---|---|---|---|
| Pre-hearing conferences: | January 20, 2005 | 1 session | |
| | January 31, 2005 | 1 session | |

| Three (3) Pre-hearing sessions with Panel @ $1,000.00* | | | = $3,000.00 |
|---|---|---|---|
| Pre-hearing conferences: | November 8, 2004 | 1 session | |
| | November 16, 2004 | 1 session | |
| | March 2, 2005 | 1 session | |

| Three (3) Hearing sessions @ $1,000.00 | | | = $3,000.00 |
|---|---|---|---|
| Hearing Dates: | May 17, 2005 | 2 sessions | |
| | May 18, 2005 | 1 session | |
| Total Forum Fees | | | = $6,900.00 |

*In accordance with Rule 10332(c) of the Code of Arbitration Procedure, the forum fees assessed against the Respondents are based on the Respondents' hearing session deposit.*

1.  The Panel has assessed $6,900.00 of the forum fees jointly and severally against Respondents.

## Fee Summary

1.  Claimant is solely liable for:

| | |
|---|---|
| Initial Filing Fee | = $1,000.00 |
| Member Fees | = $5,200.00 |
| Total Fees | = $6,200.00 |
| Less payments | = $7,325.00 |
| Refund Due Claimants | = $1,125.00 |

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 5 of 6

2. Respondents are jointly and severally liable for:

| | |
|---|---|
| Third-Party Claim Filing Fee | = $ 250.00 |
| Forum Fees | = $6,900.00 |
| Total Fees | = $7,150.00 |
| Less payments | = $1,250.00 |
| Balance Due NASD Dispute Resolution | = $5,900.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

NASD Dispute Resolution
Arbitration No. 04-03793
Award    Page 6 of 6

## ARBITRATION PANEL

| | | |
|---|---|---|
| Arthur J. Giacomarra, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Douglas R. Gray | - | Public Arbitrator |
| Patrick W. McKeon, Esq. | - | Non-Public Arbitrator |

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law and Rules, that I am the individual described herein and who executed this instrument which is my award.

Arthur J. Giacomarra, Esq.
Public Arbitrator, Presiding Chairperson

Signature Date

Douglas R. Gray
Public Arbitrator

Signature Date

Patrick W. McKeon, Esq.
Non-Public Arbitrator

Signature Date

June 17, 2005

Date of Service  (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

| | | |
|---|---|---|
| Arthur J. Giacomarra, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Douglas R. Gray | - | Public Arbitrator |
| Patrick W. McKeon, Esq. | - | Non-Public Arbitrator |

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.


Arthur J. Giacomarra, Esq.                                    Signature Date
Public Arbitrator, Presiding Chairperson


Douglas R. Gray                                              6 - 14 - 05
Public Arbitrator                                           Signature Date


Patrick W. McKeon, Esq.                                      Signature Date
Non-Public Arbitrator


June 1 1, 2005
Date of Service (For NASD Dispute Resolution use only)

NASD Dispute Resolution
Arbitration No. 04-03793
Award   Page 6 of 6

## ARBITRATION PANEL

Arthur J. Giacomarra, Esq.         -         Public Arbitrator, Presiding Chairperson
Douglas R. Gray                    -         Public Arbitrator
Patrick W. McKeon, Esq.            -         Non-Public Arbitrator

## Concurring Arbitrators' Signatures

I, the undersigned arbitrator, do hereby affirm, pursuant to Article 7507 of the Civil Practice Law
and Rules, that I am the individual described herein and who executed this instrument which is
my award.


_____                              _____
Arthur J. Giacomarra, Esq.                           Signature Date
Public Arbitrator, Presiding Chairperson


_____                              _____
Douglas R. Gray                                      Signature Date
Public Arbitrator


*Patrick W. McKeon*                                  6-17-05
Patrick W. McKeon, Esq.                              Signature Date
Non-Public Arbitrator


June 17, 2005
Date of Service  (For NASD Dispute Resolution use only)

# *Exhibit B*

THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.
ARBITRATION DEPARTMENT

| | |
|---|---|
| In the Matter of the Arbitration Between:<br><br>KASHNER DAVIDSON SECURITIES CORP.,<br><br>    *Claimant/Respondent in Counterclaim,*<br><br>               v.<br><br>STEVEN MSCISZ, MARK MSCISZ, and<br>LYNDA MSCISZ,<br><br>    *Respondents/Counterclaimants.*<br><br>               v.<br><br>VICTOR KASHNER, MATTHEW MEISTER and<br>TIMOTHY VARCHETTO,<br><br>    *Third Party Respondents.* | NASD DISPUTE RESOLUTION NO. 04-03793 |

## SUBMISSION AGREEMENT

1.     Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties hereby submit the present matter in controversy, as set forth in the statement of claim, answers, cross claims and all related counterclaims and/or third party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

2.     The undersigned parties hereby state that their attorney has read and explained to them the procedures and rules of the sponsoring organization relating to arbitration.

3.     Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s), and that the arbitration will be conducted in accordance with the Constitution, By-Laws, Regulations and/or Code of Arbitration Procedure of the sponsoring organization.

4.  Provided that they are afforded a fair and complete opportunity to obtain adjudication of their claims and defenses, the undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.  The undersigned parties reserve their right to seek adjudication of their claims and defenses in a court of competent jurisdiction if the sponsoring organization does not afford them a fair and complete opportunity to obtain such an adjudication.

IN WITNESS WHEREOF, the parties hereto have signed and acknowledged the foregoing Submission Agreement.

_____        _____
STEVEN MSCISCZ                   Date   8/26/04

_____        _____
MARK MSCISCZ                     Date   8/26/04

_____        _____
LYNDA MSCISCZ                    Date   8/26/04


**CERTIFICATE OF SERVICE**

I hereby certify that on this twenty-sixth day of August, 2004, I caused a copy of the foregoing document to be served by overnight mail upon the attorney of record for Kashner Davidson Securities Corporation.

_____
William P. Corbett, Jr.

- 2 -

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____ Steven Mscisz, et al., v. Kashner Davidson Securities Corp., et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

☐   I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

☐   II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.              for patent, trademark or copyright cases

☐   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
          315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
          380, 385, 450, 891.

☐   IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

☐   V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                                      YES  ☐        NO  ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                                      YES  ☐        NO  ☑
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                                      YES  ☐        NO  ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                                      YES  ☐        NO  ☐

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                                      YES  ☑        NO  ☐

        A.    If yes, in which division do all of the non-governmental parties reside?

              Eastern Division  ☑          Central Division  ☐          Western Division  ☐

        B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

              Eastern Division  ☐          Central Division  ☐          Western Division  ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                                      YES  ☐        NO  ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___ William P. Corbett, Jr.
ADDRESS ___ The Corbett Law Firm, PC, 85 Exchange Street, Suite 326, Lynn, MA 01901
TELEPHONE NO. ___ (781) 596-9300

(CategoryForm.wpd - 5/2/05)

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Steven Mscisz, Mark Mscisz & Lynda Mscisz | Kashner Davidson Securities Corp., Victor Kashner, Matthew Meister & Timothy Varchetto |

**(b)** County of Residence of First Listed Plaintiff    Essex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
William P. Corbett, Jr., The Corbett Law Firm, PC, 85 Exchange St. #326 Lynn, MA 01901 (781-596-9300)

Attorneys (If Known)
Howard M. Smith, Esq. Newman & Smith, One Gateway Center, Suite 350, Newton, MA 02458 (617-965-9900)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a)
Brief description of cause:
Application for Vacation or Modification of NASD Arbitration Award

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
06/24/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____